UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MARILU ROMERO-HERNANDEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-cv-1841 (TSC) |
| | ) | |
| DISTRICT OF COLUMBIA, et. al, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the court is Plaintiff's Motion for U Visa Certification. Upon consideration of the motion, Defendant District of Columbia's opposition thereto, and Plaintiff's reply in support thereof, and for the following reasons, the motion is DENIED.

### I.   BACKGROUND

Plaintiff's motion arises from a now-settled civil suit relating to a November 22, 2012 altercation between patrons at Sabor Latino Bar and Grill in Washington, D.C. that resulted in police being called to the restaurant. Plaintiff alleges that District of Columbia Metropolitan Police Department ("MPD") Officer Joshua Arana-Jimenez hit her in the face, knocking her to the ground, then pinned her down and punched her repeatedly in the face with a closed fist. (Mem. of Law in Supp. of Pl.'s Mot. for U Visa Certification, May 1, 2015 ("Mot.") at 4-5). Plaintiff also alleges that, thereafter, several MPD officers removed her from the restaurant, and in the process "slammed" her head against both a door and a window. (*Id.* at 5-6). Plaintiff claims that she suffered severe bodily harm and psychological injuries as a result of these actions (*id.* at 6-7), which she claims constituted felonious assault and deprivation of constitutional

rights under color of law in violation of 18 U.S.C. § 242 (*id.* at 12-15).  The District disputes Plaintiff's version of events.  (Def.'s Opp'n to Pl.'s Mot. for U Visa Certification, May 20, 2015 ("Opp.") at 8).

In November 2013, Plaintiff filed her underlying civil lawsuit against the District, eight named MPD officers, ten unknown MPD officers, and GC Latin Productions, which operates Sabor Latino Bar and Grill.  In October 2014, Plaintiff amended her complaint, adding a named MPD officer.  Plaintiff's amended complaint alleged the deprivation of her constitutional rights under color of law in violation of 42 U.S.C. § 1983 based on the MPD officers' use of excessive force in violation of the Fourth and Fifth Amendments.  (Am. Compl. ¶¶ 51-66).  Plaintiff also brought common law claims of assault and battery, intentional infliction of emotional distress, and negligent supervision.  (*Id*. ¶¶ 67-86).

Before any dispositive motions were filed in the civil litigation, the parties settled and voluntarily dismissed the case.

There is no existing criminal case relating to the November 22, 2012 incident (the "Incident").  While Plaintiff was initially charged with misdemeanor assault on a police officer, that charge was dismissed in June 2013 after she complied with the conditions of a deferred prosecution agreement.  (Opp. Ex. 1).

No MPD officers have been charged with any crime or infraction arising out of the Incident.  In December 2013, the Civil Rights Unit of the United States Attorney's Office for the District of Columbia stated that, after considering "the facts and circumstances surrounding the alleged misconduct" by Officer Arana-Jimenez and two other MPD officers named as defendants in Plaintiff's civil suit, it had "decided to decline criminal prosecution of [those] officers or any other officer" for the roles they played in the Incident.  (*Id.* Ex. 2).

An MPD Internal Affairs Investigative Report concerning the alleged use of force by Officer Arana-Jimenez and another MPD officer during the Incident also states, under the heading "INVOLVED SUBJECT STATEMENT(S)," that Plaintiff had retained legal counsel, made public her intent to pursue civil litigation and "declined to be interviewed." (*Id.* Ex. 3). Plaintiff claims that neither she nor her counsel were ever contacted by MPD Internal Affairs to participate in an interview, and therefore reads the Investigative Report to mean that "Internal Affairs assumed that because Plaintiff filed this civil lawsuit, she would not cooperate with the investigation." (Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for U Visa Certification, May 28, 2015 ("Reply") at 4-5). Plaintiff also notes that,

> to the extent MPD sought to contact [her] prior to this civil lawsuit, it is entirely understandable that [she] may have been hesitant to cooperate in an investigation performed by the very same entity whose officers had violently assaulted her and then charged her with a crime, particularly while the criminal charges against her were still pending.

(*Id.* at 5 n.4) (emphasis omitted).[1]

Plaintiff now asks the court to complete a U Nonimmigrant Status Certification form certifying that she "'has been helpful, is being helpful, or is likely to be helpful' in the investigation or prosecution of criminal activity" related to the Incident. 8 U.S.C. § 1184(p)(1); *see also* 8 U.S.C. § 1101(a)(15)(U)(i)(III). The court declines to do so, having found that Plaintiff has failed to meet the requirements for U visa certification.

## II.   LEGAL STANDARD

Congress created the nonimmigrant U visa classification as part of the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-387, § 1513, 114 Stat. 1464 (2000). The stated purpose of the new classification was to

---

[1] It is unclear whether this statement means that Plaintiff concedes that she refused to speak with MPD Internal Affairs investigators.

3

strengthen the ability of law enforcement agencies to detect, investigate, and prosecute cases of domestic violence, sexual assault, trafficking of aliens, and other crimes described in section 101(a)(15)(U)(iii) of the Immigration and Nationality Act committed against aliens, while offering protection to victims of such offenses in keeping with the humanitarian interests of the United States.

*Id.* at § 1513(a)(2)(A). The nonimmigrant U visa classification was intended to "encourage law enforcement officials to better serve immigrant crime victims and to prosecute crimes committed against aliens," "facilitate the reporting of crimes to law enforcement officials by trafficked, exploited, victimized, and abused aliens who are not in lawful immigration status," and give law enforcement officials "a means to regularize the status of cooperating individuals during investigations or prosecutions." *Id.* at § 1513(a)(2)(A)-(B).

To qualify for a U visa, an applicant must demonstrate that she (i) has suffered substantial physical or mental abuse as the result of having been the victim of qualifying criminal activity; (ii) possesses information concerning the qualifying criminal activity; and (iii) has been helpful, is being helpful or is likely to be helpful in investigating or prosecuting the qualifying criminal activity. *See* 8 U.S.C. § 1101(a)(15)(U)(i)(I)-(III). Qualifying criminal activity is limited to the following, or "any similar activity in violation of Federal, State, or local criminal law":

> rape; torture; trafficking; incest; domestic violence; sexual assault; abusive sexual contact; prostitution; sexual exploitation; stalking; female genital mutilation; being held hostage; peonage; involuntary servitude; slave trade; kidnapping; abduction; unlawful criminal restraint; false imprisonment; blackmail; extortion; manslaughter; murder; felonious assault; witness tampering; obstruction of justice; perjury; fraud in foreign labor contracting (as defined in section 1351 of Title 18); or attempt, conspiracy, or solicitation to commit any of the above mentioned crimes.

*Id.* § 1101(a)(15)(U)(iii).

United States Citizenship and Immigration Services has sole jurisdiction over U visa applications. 8 C.F.R. § 214.14(c)(1). In order to apply for a U visa, an applicant must first acquire a certification "from a Federal, State, or local law enforcement official, prosecutor,

judge, or other Federal, State, or local authority investigating criminal activity." 8 U.S.C. § 1184(p)(1). "The decision whether to issue a certification for a U-Visa petition is a discretionary one." *Linares v. Sheriff's Office of Broward Cnty.*, 588 F. App'x 363, 363 (5th Cir. 2014) (citation omitted); *see also Trevino v. Benton Cnty., Ark.*, 578 F. App'x 626, 627 (8th Cir. 2014) ("the district court did not abuse its discretion in denying Trevino's motion for U-Visa certification"); *Bejarano v. Homeland Sec. Dep't*, 300 F. App'x 651, 653 (11th Cir. 2008) ("any decision by the certifying official to sign or decline to sign the status certification is discretionary").

In the case of certifications by a judge, the certification must state that (i) "the person signing the certificate is . . . a Federal, State, or local judge"; (ii) the judge "has responsibility for the detection, investigation, prosecution, conviction, or sentencing of qualifying criminal activity"; (iii) "the applicant has been a victim of qualifying criminal activity that the [judge] is investigating or prosecuting"; (iv) the applicant "possesses information concerning the qualifying criminal activity of which he or she has been a victim"; (v) the applicant "has been, is being, or is likely to be helpful to an investigation or prosecution of that qualifying criminal activity"; and (vi) "the qualifying criminal activity violated U.S. law." 8 C.F.R. § 214.14(c)(2)(i).[2]

Recognizing the fact that "judges neither investigate crimes nor prosecute perpetrators," the applicable regulations specify that the statutory phrase "investigation or prosecution" is to be "interpreted broadly . . . to include the conviction and sentencing of the perpetrator because these extend from the prosecution." New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53014, 53020 (Sept. 17, 2007).

---

[2] Additionally, "since the initiation of cooperation, [the applicant cannot have] refused or failed to provide information and assistance reasonably requested." 8 C.F.R. § 214.14(b)(3).

### III.  ANALYSIS

Plaintiff argues that the court should grant her motion because she has made a *prima facie* showing that the MPD officers' alleged conduct during the Incident caused her severe physical and psychological injuries and constitutes qualifying criminal activity about which she possesses information. (Mot. at 11-16). Plaintiff further alleges that she has already been helpful in the investigation of the Incident, and that "she is more than willing to cooperate fully in any future investigation and/or prosecution of the MPD officers involved." (*Id.* at 3; *see also id.* at 16-18).

#### a.  The "Investigation or Prosecution" of Qualifying Criminal Activity

As an initial matter, there is no existing investigation or prosecution related to the Incident, nor is there any evidence indicating that any such investigation or prosecution will take place in the future, and no MPD officers have been charged with any crime or infraction arising out of the Incident. While there is evidence regarding a past Internal Affairs investigation into the Incident – which concluded that the use of force by Officer Arana-Jimenez was justified (Opp. Ex. 3) – this court had no involvement whatsoever in that investigation.

The fact that the regulations allow judges to grant U visa certifications does not mean that judges possess unfettered discretion to do so. Rather, the regulations require that a certifying judge be connected to an underlying criminal prosecution or investigation. *See Agaton v. Hospitality & Catering Servs., Inc.,* No. 11-1716, 2013 WL 1282454, at *4 (W.D. La. Mar. 28, 2013) ("[T]his Court may not certify a U-Visa application when this judge has no responsibilities or even knowledge regarding any possible pending investigation or prosecution of the qualifying criminal activity. . . . [A]lthough the regulations provide that the statutory term 'investigation or prosecution' should be interpreted broadly to accommodate the authority of federal judges to certify, to read the regulations so broadly as to allow certification by a judge when that judge has

no connection to any criminal prosecution or investigation involving the victims does violence to the rest of the regulatory language.").

For example, the regulations require that the certifying official be "responsible" for "detection, investigation, prosecution, conviction, or sentencing of qualifying criminal activity." 8 C.F.R. 214.14(c)(2)(i). "Conviction" and "sentencing" were included in the regulations "because these extend from the prosecution" of qualifying criminal activity. 72 Fed. Reg. at 53020. But a judge cannot be said to be "responsible" for conviction or sentencing where, as here, the judge "has no responsibilities regarding any pending investigation or prosecution of the qualifying crime." *Agaton*, 2013 WL 1282454, at *4.

Similarly, the certification must also state that "the applicant has been a victim of qualifying criminal activity that the certifying official's agency is investigating or prosecuting." 8 C.F.R. § 214.14(c)(2)(i). Even given the regulatory directive to interpret statutory references to "investigations or prosecutions" broadly in cases where a judge is acting as the certifying official, any reasonable reading of this clause would still require a certifying judge to be involved to some degree in the investigation or prosecution of qualifying criminal activity.

Because this court has had no involvement whatsoever in any "detection, investigation, prosecution, conviction, or sentencing" related to the Incident, it is compelled to exercise its discretion to deny Plaintiff's motion. 8 C.F.R. 214.14(c)(2)(i).

### b. Plaintiff's Past, Present and Future Helpfulness

Plaintiff has also failed to show that she "has been, is being, or is likely to be helpful to an investigation or prosecution" of qualifying criminal activity. *Id.* First, the court cannot certify that Plaintiff "has been" helpful where the only evidence of a past investigation or prosecution of the Incident before the court (other than the prosecution of Plaintiff herself) is the MPD Internal Affairs Investigative Report stating that Plaintiff "declined to be interviewed."

7

(Opp. Ex. 3). While Plaintiff's assertion that she was never contacted by MPD Internal Affairs contradicts the report, it is not affirmative evidence of her helpfulness, which is required for certification.

Second, the court cannot certify that Plaintiff "is being" helpful to an investigation or prosecution of qualifying criminal activity where, as here, no such investigation or prosecution exists.

Third, the court cannot certify that Plaintiff "is likely to be helpful" to some present or future investigation or prosecution of qualifying criminal activity where no such investigation or prosecution exists at present and it appears unlikely that any such investigation or prosecution will ever take place.

Thus, because there is no evidence indicating that Plaintiff has been, is being, or is likely to be helpful to an investigation or prosecution of qualifying criminal activity, and because it is also unclear whether any qualifying criminal activity actually occurred, the court is further compelled to exercise its discretion to deny Plaintiff's motion. *See Baiju v. U.S. Dep't of Labor*, No. 12-CV-5610 (KAM), 2014 WL 349295, at *20 (E.D.N.Y. Jan. 31, 2014) (declining to grant motion for U visa certification "because there is no evidence of any possible pending investigation or prosecution of the qualifying crimes that petitioner alleges").

IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion for U Visa Certification is DENIED.

Date:  October 28, 2015

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

8